**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD A. CARROLL | |
| Plaintiff, | CIVIL ACTION NO. 3:12-0553 |
| v. | |
| CLIFFORD TOWNSHIP, DENNIS KNOWLTON, Individually and in his Official Capacity as Chairman/Supervisor, and CHRIS MARCHO, Individually and in his Official Capacity as Supervisor, | (JUDGE CAPUTO) |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiff's Amended Complaint (Doc. 9) filed by Defendants Clifford Township, Dennis Knowlton ("Knowlton"), and Chris Marcho ("Marcho") (collectively "Defendants"). Pursuant to 42 U.S.C. § 1983, Plaintiff Donald Carroll ("Carroll") asserts that Defendants have retaliated against him in violation of his First Amendment rights by refusing to complete his application for membership to the Fraternal Order of the Police, by eliminating his position with the Clifford Township Police Department, and by reducing the Police Department's budget. Plaintiff also asserts that the refusal to complete his membership application denies him his First Amendment right to associate. Defendants have moved to dismiss all claims for failure to state a claim upon which relief can be granted. Plaintiff's claims against Clifford Township will be dismissed because he has failed to allege that individual Defendants had final policymaking authority to bind the municipality. Also, as Plaintiff's First Amendment retaliation claims against individual Defendants are insufficiently pled, these claims will be dismissed without prejudice. However, because Plaintiff has adequately pled that individual Defendants have interfered with his First Amendment association rights by refusing to complete his

application for membership with the Fraternal Order of Police, Defendants' motion to dismiss the association claim will be denied.

## I. Background

The facts as alleged in Plaintiff's Amended Complaint are as follows:

Knowlton is Chairman of the Board of Supervisors of Clifford Township and Marcho is a Supervisor for Clifford Township. (*Am. Compl.*, ¶¶ 3-4.)  In 2000, Plaintiff was hired as a part-time police officer for Clifford Township. (*Id*. at ¶ 8.)  In or around 2007, Plaintiff was promoted to the position of Police Chief. (*Id*.)

On or about August 2009, Plaintiff, acting as a citizen, initiated a lawsuit in the Court of Common Pleas of Susquehanna County, Pennsylvania against Clifford Township for alleged violations of the Police Tenure Act (the "state court action"). (*Id*. at ¶ 9.)  The lawsuit was picked up by the local newspaper. (*Id*. at ¶ 10.)

On several occasions since Plaintiff commenced the state court action, including in March 2011 and February 2012, he has requested that Defendants complete his application to be a member of the Fraternal Order of Police, Lodge 63 (the "FOP"). (*Id*. at ¶ 12.)  On each occasion, however, Defendants have refused to confirm that Plaintiff is a full-time employee and has passed his probationary period, both of which are necessary for Plaintiff to be admitted to the FOP. (*Id*. at ¶ 13.)  This issue was addressed during Supervisors' meetings, and Defendants took official action to deny Plaintiff the ability to associate with the FOP. (*Id*.)  Although Defendants refuse to complete his application to the FOP, they have permitted another police officer the right to associate. (*Id*.)  And, by refusing to complete his application, Defendants have interfered with Plaintiff's ability to join the FOP. (*Id*. at ¶ 18.)

In addition, in November 2011, Marcho insisted Plaintiff not make any arrests on Main Street in Clifford Township because Marcho's personal business is located on Main

Street and the arrests negatively impacted his business. (*Id*. at ¶ 24.)  Within two weeks after Plaintiff refused to engage in such conduct, Defendants reduced the Police Department budget. (*Id*. at ¶¶ 25-26.)  And, approximately one month after Plaintiff initiated the present action, Defendants eliminated Plaintiff's position. (*Id*. at ¶ 22.)

Based on the foregoing events, Plaintiff commenced this action on March 28, 2012.  (Doc. 1.)  After Defendants' filed a motion to dismiss, Plaintiff filed an Amended Complaint on May 15, 2012.  In his Amended Complaint, Plaintiff sets forth the following claims against all Defendants: (I) First Amendment retaliation for commencing the state court action; (II) First Amendment freedom of association; (III) First Amendment retaliation in eliminating his position for commencing the instant action; and (IV) First Amendment retaliation in reducing the Police Department's budget. (*Am. Compl*.)  On May 24, 2012, Defendants filed the instant motion to dismiss all four counts of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. (Doc. 9.)  As Defendants' motion has now been fully briefed, it is ripe for disposition.

## II. Discussion

**A.    Legal Standard**

**1.    12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their

4

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**2.   Section 1983**

Plaintiff's claims against Defendants are asserted pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen ... or any other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299

F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

## B.    Defendants' Motion to Dismiss

### 1.    First Amendment Retaliation Claims

Defendants seek dismissal of Counts I, III, and IV of Plaintiff's Amended Complaint, which assert First Amendment retaliation claims. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "'The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id*. (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Thus, "[t]he effect of the alleged conduct on the employee's freedom of speech 'need not be great in order to be actionable,' but it must be more than *de minimis*." *McKee*, 436 F.d at 170 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

#### a.    Retaliation for Filing the State Court Action (Count I)

In Count I of his Complaint, Plaintiff alleges that Defendants retaliated against him in violation of his First Amendment rights by refusing to process his application to the FOP as punishment for commencing the state court against Clifford Township in 2009. Defendants argue that Count I fails to adequately allege the second and third elements of a First Amendment retaliation claim identified in *Thomas*.[1]

---

[1] In the public employment context, an employee's expression is protected when (1) he or she spoke as a citizen on a matter of public concern; and (2) the interest in

In the Third Circuit, "the victim of petty harassments in the workplace as a result of speaking on matters of public concern is in itself retaliation- even if the employee cannot prove a change in the actual terms of his or her employment- and thus could be actionable under the First Amendment." *McKee*, 436 F.3d at 170 (citing *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000) (plaintiff adequately stated First Amendment retaliation claim where campaign of retaliatory harassment resulted in mental anxiety, loss of reputation, sleeplessness, and stress)). Despite the holding in *Suppan* that a First Amendment claim can be alleged without an alleged causal connection to a change in the plaintiff's terms of employment, "not every critical comment- or series of comments- made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights." *Id*. (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

Here, while Plaintiff has not asserted that Defendants engaged in a "campaign of harassment" as identified in *McKee*, or harassment resulting in anxiety, loss of reputation, or stress as set forth in *Suppan*, Plaintiff has stated that on "several occasions" Defendants have refused to complete his FOP membership application. (*Am. Compl.*, ¶ 12.) Although the refusal to complete the application did not alter the terms of Plaintiff's employment, the allegations are sufficient at the motion to dismiss stage to be considered petty workplace harassments adequate to state a claim.

Nevertheless, Count I of Plaintiff's Complaint will be dismissed because he fails to

---

the protected expression is not outweighed by "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2493, 180 L. Ed. 2d 408 (2011) (quoting *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). Defendants have not asserted that Plaintiff insufficiently pled activity protected by the First Amendment. As such, the Court will assume for purposes of this motion that Plaintiff adequately stated this element of the *prima facie* retaliation claim.

allege the necessary causal link between his protected conduct and the retaliatory action. To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, "the plaintiff usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "However, a protected activity and a retaliatory action must be 'very close' in time to prove causation." *Conklin v. Warrington Twp.*, No. 06-2245, 2008 WL 2704629, at *12 (M.D. Pa. July 7, 2008) (dismissing First Amendment retaliation claim because two month period between protected activity and retaliatory action was not so suggestive as to give rise to inference of causation). Here, Plaintiff alleges that he initiated the state court action in August 2009 and Defendants' retaliatory actions began on March 14, 2011. (*Compl.*, ¶ 9.) Hence, the difference in time between Plaintiff's protected activity and the corresponding retaliatory action is over eighteen (18) months. As such, Plaintiff has failed to allege causation based on temporal proximity. Moreover, the fact that another officer's application was completed- without any additional averments as to the circumstances surrounding Defendants' willingness to complete this other application- is insufficient to demonstrate antagonistic conduct on the part of Defendants or permit an inference of causation based on the allegations as a whole. As such, Count I will be dismissed, but Plaintiff may amend his complaint to properly plead the necessary causation element of the retaliation claim.

### b. Retaliation by Eliminating Plaintiff's Position (Count III) and Reducing the Budget (Count IV)

In Count III of the Amended Complaint, Plaintiff alleges that his position was eliminated within just over a month after he commenced the instant action. Count IV of Plaintiff's Amended Complaint asserts retaliation for the reduction of the Police

Department's budget after Plaintiff refused to honor Defendant Marcho's request to not make arrests in front of Marcho's business. Defendants argue that these allegations are insufficient to state First Amendment retaliation claims because the decisions to eliminate a position or reduce a budget are legislative acts. As such, Defendants Marcho and Knowlton assert that they have absolute immunity for these decisions. In opposition, Plaintiff argues that the position elimination was not legislative because "the decision was not made at a Supervisor official meeting and was not advertised to the community for public comments." Similarly, he asserts that the budget reduction did not occur at a publically noticed meeting of the Supervisors. These facts, however, are not pled in the Amended Complaint.

"Local legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities." *In re Montgomery Cnty.*, 215 F.3d 367, 376 (3d Cir. 2000) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)). To be legislative, however, the act must be both substantively and procedurally legislative in nature. *Id*. An act is substantially legislative if it involves policy-making decisions of a general scope or line-drawing. *Ryan v. Burlington Cnty.*, 889 F.2d 1286, 1290 (3d Cir. 1989). And, an act is procedurally legislative if it is passed by means of established legislation. *Id*. at 1291. The motive or intent of an individual performing an act is irrelevant to whether it is legislative. *Bogan*, 523 U.S. at 55. The Third Circuit Court of Appeals "has repeatedly stated that decisions affecting a single individual or a small number of people do not implicate legislative power and, thus, such actions are administrative in nature, whereas decisions affecting the community at large are likely legislative." *Fowler–Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 338 (3d Cir. 2006). But, "the elimination of a public employment position- as opposed to the firing of a single individual- constitutes a 'legislative act.'" *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 775

(3d Cir. 2000).  Similarly, the acts of voting for and approving a budget are legislative acts. *See, e.g., Brominski v. Cnty. of Luzerne*, 289 F. Supp. 2d 591, 594 (M.D. Pa. 2003).

Based on the facts as alleged in the Amended Complaint, Knowlton and Marcho are entitled to absolute immunity on the decision to eliminate Plaintiff's position and reduce the budget.  As identified in *Gallas* and *Brominski*, the elimination of a position or the reduction of the budget are legislative acts.  While Plaintiff's brief asserts that the position elimination and budget reduction did not occur at scheduled meetings- which implies that these acts were not procedurally legislative- the Amended Complaint is devoid of such allegation.  Thus, although Defendants have the burden to show an entitlement to absolute immunity, Plaintiff's factual averments as to Counts III and IV are so scarcely pled that it is not possible to see from the face of the Amended Complaint as alleged how absolute immunity would not apply in this case.[2]  As such, Counts III and IV of the Amended Complaint will be dismissed.  However, based on the factual circumstances identified in his brief, Plaintiff will be given the opportunity to amend his pleading to more fully detail the circumstances in which his position was eliminated and the budget was reduced.

### 2. First Amendment Association Claim (Count II)

Count II of the Amended Complaint asserts that Plaintiff's First Amendment right to associate with the FOP was violated by Defendants' refusal to complete his FOP application.  Defendants seek dismissal of the association claim because Plaintiff "fails to state how and why the signature of Defendants is required for an application to a separate, private organization."  In opposition, Plaintiff argues that he has adequately stated a claim

---

[2] Indeed, based on the threadbare allegations in Counts III and IV of his Amended Complaint, Plaintiff has failed to show that the claims are "facially plausible" to allow "the court to draw reasonable inferences that the defendant[s] [are] liable for the misconduct alleged." *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 129 S. Ct. at 1948-49.)

because "Plaintiff's complaint notes that confirmation of employment status is necessary for Plaintiff to be admitted to the Fraternal Order of Police."

The "right of free association" is "a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Shelton v. Tucker*, 364 U.S. 479, 485, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960). Thus, "'impediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First Amendment.'" *Id*. (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 80 n. 4, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). Courts have described two types of freedom of association claims: the right to freedom of intimate association and the right to freedom of expressive association. *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 198 (3d Cir. 1990). The right to expressive association protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

Here, Plaintiff will be permitted to proceed on his First Amendment association claim against Defendants Knowlton and Marcho because he has adequately alleged that Defendants' refusal to complete his application interferes with his ability to join the FOP. (*Am. Compl.*, ¶¶ 12-13, 18.) And, because the FOP is alleged to be a union, (*Am. Compl.*, ¶ 15), and "[i]t is well established that the First Amendment right of association guarantees the right to join a union," *Day v. Borough of Carlisle*, No. 04-1040, 2006 WL 1892711, at *8 (M.D. Pa. July 10, 2006), Plaintiff has sufficiently alleged that he has been denied the right of associating with others in the pursuit of constitutionally protected activity.

### 3.     Claims against Clifford Township

Defendants also seek dismissal of all claims against Clifford Township because a municipality may not be held liable under § 1983 on a theory of *respondeat superior*. And,

since Plaintiff has not alleged that a policy or custom of Clifford Township caused a constitutional deprivation, Defendants argue that Plaintiff has failed to allege a cause of action under *Monell*. In opposition, Plaintiff asserts that Clifford Township is liable for the acts of individual Defendants because they are "policymakers."

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. An individual's conduct implements official policy or practice when:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125-26 (3d Cir. 2003)). In order to ascertain if an official has final policymaking authority, and can thus bind the municipality by his conduct, "a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, . . . and (2) whether the official's authority to make policy in that area is *final and unreviewable*." *Id*. (internal citations omitted).

In this case, Plaintiff's claims against Clifford Township will be dismissed because the Amended Complaint is devoid of any allegations that Defendants Knowlton and Marcho

had final policymaking to bind Clifford Township. In particular, Plaintiff alleges that Knowlton and Marcho were Township Supervisors, (*Am. Compl.*, ¶¶ 3-4) and were "servants, agents, and/or employees of Defendant Clifford Township." (*Id.* at ¶ 5.) Absent from the Amended Complaint, however, is further allegations that individual Defendants had final policymaking authority or that their authority to make policy was unreviewable. *See, e.g., Santiago v. Warminster*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (although whether official is a final policymaker is ultimately a legal question rather than a factual question, "*that does not relieve [plaintiff] of the obligation to plead in some fashion that [the official] had final policymaking authority*, as that is the key element of a *Monell* claim"). Accordingly, because Plaintiff's Amended Complaint lacks any allegations that Knowlton and Marcho had final policymaking authority, Plaintiff's claims against Clifford Township will be dismissed without prejudice.

**C.    Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). Here, because Plaintiff may be able to allege facts sufficient to state First Amendment retaliation claims against Defendants, he will be granted leave to amend Counts I, III, and IV of the Amended Complaint. Moreover, Plaintiff will be granted the opportunity to amend the claims against Clifford Township to adequately state that individual Defendants had final policymaking authority to bind the municipality.

### III. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part. The motion to dismiss all claims against Defendant Clifford Township

is granted, but Plaintiff will be given the opportunity to amend his complaint.  As to the individual Defendants, the motion to dismiss the First Amendment association claim will be denied, but the motion to dismiss the First Amendment retaliation claims will be granted. However, Plaintiff will be given leave to amend the retaliation claims.

    An appropriate order follows.


August 10, 2012                                         /s/ A. Richard Caputo  
Date                                                     A. Richard Caputo  
                                                              United States District Judge