**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD A. CARROLL, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-12-0553 |
| v. | |
| CLIFFORD TOWNSHIP, DENNIS KNOWLTON, Individually and in his Official Capacity as Chairman/Supervisor, and CHRIS MARCHO, Individually and in his Official Capacity as Supervisor, | (JUDGE CAPUTO) |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 17) filed by Defendants Clifford Township, Dennis Knowlton ("Knowlton"), and Chris Marcho ("Marcho") (collectively "Defendants"). Plaintiff Donald Carroll ("Carroll"), a former Clifford Township Police Chief, asserts that Defendants retaliated against him in violation of his First Amendment rights by refusing to complete his application for membership to the Fraternal Order of the Police, by eliminating his position with the Clifford Township Police Department, and by reducing the Police Department's budget.[1] Defendants have moved to dismiss the First Amendment retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiff has sufficiently stated his First Amendment retaliation claims, Defendants' motion to dismiss will be denied.

### **I. Background**

The facts as alleged in Plaintiff's Second Amended Complaint are as follows:

---

[1] Plaintiff also asserts a First Amendment association claim. (*Sec. Am. Compl.*, ¶¶ 19-23.) I previously found the allegations sufficient to state a claim upon which relief could be granted. (Docs. 13; 14.)

Knowlton is Chairman of the Board of Supervisors of Clifford Township and Marcho is a Supervisor for Clifford Township. (*Am. Compl.*, ¶¶ 3-4.) Defendants Knowlton and Marcho are policymakers of Clifford Township with final, unreviewable policymaking authority. (*Id*. at ¶ 10.)

In 2000, Plaintiff was hired as a part-time police officer for Clifford Township. (*Id*. at ¶ 8.) In or around 2007, Plaintiff was promoted to the position of Police Chief. (*Id*.)

In August 2009, Plaintiff, acting as a citizen, initiated a lawsuit in the Court of Common Pleas of Susquehanna County, Pennsylvania against Clifford Township for alleged violations of the Police Tenure Act (the "state court action"). (*Id*. at ¶ 9.) The lawsuit in which Plaintiff requested access to the courts was picked up by the local newspaper. (*Id*. at ¶ 11.) Thereafter, Defendants engaged in a campaign of harassment against Plaintiff for his protected activities by falsely accusing him of wrongdoing, terminating his healthcare benefits, and refusing to allow him to associate with the Fraternal Order of Police. (*Id*. at ¶ 12.) Had he not commenced the state court action, Plaintiff would not have been subject to the campaign of harassment. (*Id*. at ¶ 13.)

On several occasions after Plaintiff commenced the state court action, including in March 2011 and February 2012, he requested that Defendants complete his application to be a member of the Fraternal Order of Police, Lodge 63 (the "FOP"). (*Id*. at ¶ 15.) On each occasion, however, Defendants refused to confirm Plaintiff's status as a full-time employee and that he passed his probationary period, both of which were necessary for Plaintiff to be admitted to the FOP. (*Id*. at ¶ 16.) This issue was addressed during Supervisor meetings, and Defendants took official action to deny Plaintiff the ability to associate with the FOP. (*Id*.) Although Defendants refused to complete his application to the FOP, they permitted another police officer the right to associate. (*Id*. at 18.) And, by refusing to complete his application, Defendants interfered with Plaintiff's ability to join the FOP. (*Id*.)

2

In addition, in November 2011, Marcho insisted that Plaintiff not make any arrests on Main Street in Clifford Township because Marcho's personal business is located on Main Street and the arrests negatively impacted his business. (*Id*. at ¶ 30.) Within two (2) weeks after Plaintiff refused to engage in such conduct, Defendants reduced the Police Department budget. (*Id*. at ¶ 32.) And, approximately one month after Plaintiff initiated the present action, Defendants eliminated his position. (*Id*. at ¶ 25.) The decision to eliminate Plaintiff's position was not advertised nor done in accordance with the laws of the Commonwealth. (*Id*. at ¶ 26.)

Based on the foregoing events, Plaintiff commenced this action on March 28, 2012. (Doc. 1.) Defendants thereafter moved to dismiss Plaintiff's Amended Complaint, and the motion was granted in part and denied in part on August 10, 2012. Plaintiff then filed a Second Amended Complaint on August 30, 2012 to cure the deficiencies identified with respect to the Amended Complaint. In his Second Amended Complaint, Plaintiff asserts claims for: (I) First Amendment retaliation for commencing the state court action; (II) First Amendment freedom of association; (III) First Amendment retaliation in eliminating his position for commencing the instant action; and (IV) First Amendment retaliation in reducing the Police Department's budget after Plaintiff refused to comply with Defendant Marcho's request to refrain from making arrests on Main Street. (*Sec. Am. Compl*.) On September 11, 2012, Defendants filed the instant motion to dismiss the First Amendment retaliation claims. (Doc. 9.) As Defendants' motion has now been fully briefed, it is ripe for disposition.

## II. Discussion

**A.   Legal Standard**

**1.   12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed.

R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, - - - F.3d - - - , 2012 WL 4335958, at *8 (3d Cir. Sept. 24, 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**2.    Section 1983**

Plaintiff's claims against Defendants are asserted pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen ... or any other person ... to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

**B.    First Amendment Retaliation**

Defendants seek dismissal of Plaintiff's First Amendment retaliation claims, Counts I, III, and IV of Plaintiff's Second Amended Complaint. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "'The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id*. (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Thus, "[t]he effect of the alleged conduct on the employee's freedom of speech 'need not be great in order to be actionable,' but it must be more than *de minimis*." *McKee*, 436 F.3d at 170 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

### 1.     Retaliation for Filing the State Court Action (Count I)

In Count I of the Second Amended Complaint, Plaintiff alleges that Defendants retaliated against him in violation of his First Amendment rights by refusing to process his application to the FOP as punishment for commencing the state court action against Clifford Township in 2009. Defendants argue that Count I fails to adequately allege a causal link between the constitutionally protected conduct and the retaliatory action.

To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, "the plaintiff usually must prove one of two things:  (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). While "a protected activity and a retaliatory action must be 'very close' in time to prove causation," *Conklin v. Warrington Twp.*, No. 06-2245, 2008 WL 2704629, at *12 (M.D. Pa. July 7, 2008), "'the mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. SEPTA*, 982 F.2d 892, 894 (3d Cir. 1993)). Instead, causation may be based on proof of a pattern of antagonism, which "refers to intervening antagonism between the time of the protected activity and the time of the alleged retaliatory conduct." *Kriss v. Fayette Cnty.*, 827 F. Supp. 2d 477, 495 (W.D. Pa. 2011) (citing *Marra*, 497 F.3d at 302). Allegations regarding a pattern of antagonism that commenced prior to the plaintiff engaging in protected activity, however, are insufficient to state a First Amendment retaliation claim as they fail to establish a causal link between the protected activity and the allegedly retaliatory conduct. *See id*.

Here, Plaintiff has sufficiently alleged a causal connection based on a pattern of antagonism that occurred after he engaged in protected conduct, the filing the state court

action, and the time of the alleged retaliatory conduct, the refusal to complete his FOP application. Specifically, Plaintiff claims that after he commenced the state court action, Defendants improperly accused him of wrongdoing and terminated his health benefits, which culminated in Defendants' retaliation against him by refusing to complete the FOP application. (*Sec. Am. Compl.*, ¶ 12.) And, but for Plaintiff's efforts to seek redress in the state court action, this pattern of antagonism would not have occurred. (*Id*. at ¶ 13.) While the state court action began in August 2009 and the refusal to complete the FOP application in March 2011 is not an "unusually suggestive time proximity," *DeFranco*, 287 F. App'x at 155, accepting all allegations in the Second Amended Complaint as true, Plaintiff has alleged that Defendants engaged in a pattern of antagonism towards him between the filing of the state court action and Defendants' refusal to complete the FOP application. While these allegations may be insufficient to establish causation later in this action, they are sufficient to state a plausible claim for relief at this point. Plaintiff will therefore be permitted to proceed with Count I of the Second Amended Complaint.

## 2.     Retaliation by Eliminating Plaintiff's Position (Count III)

In Count III of the Second Amended Complaint, Plaintiff alleges that his position was eliminated within just over a month after he commenced the instant action. Defendants argue that Count III fails to state a First Amendment retaliation claim because the decision to eliminate a position is a legislative act. As such, Defendants Marcho and Knowlton assert that they have absolute immunity for this decision.

"Local legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities." *In re Montgomery Cnty.*, 215 F.3d 367, 376 (3d Cir. 2000) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)). To be legislative, however, the act must be both substantively and procedurally legislative in nature. *Id*. An act is substantially legislative if it involves policy-making

decisions of a general scope or line-drawing. *Ryan v. Burlington Cnty.*, 889 F.2d 1286, 1290 (3d Cir. 1989). And, an act is procedurally legislative if it is passed by means of established legislation. *Id*. at 1291. The motive or intent of an individual performing an act is irrelevant to whether it is legislative. *Bogan*, 523 U.S. at 55. The Third Circuit Court of Appeals "has repeatedly stated that decisions affecting a single individual or a small number of people do not implicate legislative power and, thus, such actions are administrative in nature, whereas decisions affecting the community at large are likely legislative." *Fowler–Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 338 (3d Cir. 2006). But, "the elimination of a public employment position- as opposed to the firing of a single individual- constitutes a 'legislative act.'" *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 775 (3d Cir. 2000).

Plaintiff has sufficiently stated a claim against Defendants in Count III of the Second Amended Complaint. Here, Plaintiff alleges that Defendants' decision to eliminate his position was not done in accordance with the laws of the Commonwealth, and, also, that Defendants were aware that this action was unlawful. (*Sec. Am. Compl.*, ¶¶ 26-27.) While Defendants correctly note that Plaintiff does not identify the Pennsylvania statutory provision regarding the reduction of the size of a police force in the Second Amended Complaint, Plaintiff has claimed that the position elimination was procedurally defective. And, as claims should be dismissed on a 12(b)(6) motion pursuant to an affirmative defense[2] only when the defense is "apparent from the face of the complaint," *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 831 (3d Cir. 2010), and the applicability of the absolute immunity defense is not clear from the face of the Second Amended Complaint, Defendants' motion to dismiss

---

[2] "Absolute immunity is an affirmative defense that should [generally] be asserted in an answer." *Desi's Pizza, Inc. City of Wilkes-Barre*, 321 F.3d 411, 428 (3d Cir. 2003).

Count III will be denied.

### 3. Retaliation by Reducing the Police Department Budget (Count IV)

Count IV of Plaintiff's Second Amended Complaint asserts retaliation for the reduction of the Police Department's budget after Plaintiff refused to honor Defendant Marcho's request to refrain from making arrests in front of Marcho's business on Main Street. (*Sec. Am. Compl.*, ¶¶ 30-31.) Defendants argue that these allegations fail to state that Plaintiff engaged in any protected activity with respect to Count IV. In opposition to Defendants' motion to dismiss, Plaintiff argues that he spoke out in refusing to comply with Defendant Marcho's request, which is a matter of public concern because politicians cannot use the police department for their own personal profit.

According to the Supreme Court, a public employee does not surrender all of his or her First Amendment rights merely by reason of his or her employment. *See Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006) (citing, *inter alia, Pickering v. Board of Education of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). Specifically, the Court has recognized the right of public employees to speak on matters of public concern, typically matters concerning government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment. *See City of San Diego, California v. Roe*, 543 U.S. 77, 80, 125 S. Ct. 521, 523–524, 160 L. Ed. 2d 410 (2004).

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citations omitted). The question of whether the activity is protected is a

question of law. *Id*.

A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statements he made. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (citing *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951). A public employee, however, does not speak as a citizen when statements are made pursuant to the employee's official duties. *See Sexton v. Cnty. of York*, No. 12-CV-0402, 2012 WL 2192250, at *4 (M.D. Pa. June 14, 2012). Thus, "the critical fact is whether the activity or speech performed by a public employee is within the scope of [the employee's] routine operations." *Id*. (citations omitted). "Whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Id*. (citing *Foraker v. Chaffinch*, 501 F.3d 231, 241-42 (3d Cir. 2007)).

Next, whether speech can be fairly characterized as addressing a matter of political, social, or other community concern requires consideration of the content, form, and context of the speech. *See Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (citing *Connick*, 461 U.S. at 146-48, 103 S. Ct. 1684). "The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials.'" *Id*. (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. 1684). "This means that public speech cannot 'constitute merely personal grievances.'" *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (quoting *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994)). Thus, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Swineford v. Snyder Cnty.*, 15 F.3d 1258, 1271 (3d Cir. 1994). And, whether a public

employee elects to convey his or her views privately rather than publically is not determinative of whether the expression is entitled to protection. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414-16, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979) ("we are unable to agree that private expression of one's views is beyond constitutional protection" and "[n]either the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread views before the public.").

Here, for purposes of a motion to dismiss, Plaintiff has adequately alleged that he was retaliated against in violation of his First Amendment rights after he refused to honor Defendant Marcho's request to refrain from arresting citizens on Main Street. First, because the Second Amended Complaint does not indicate whether Plaintiff expressed his opposition to Defendant Marcho's request pursuant to his official duties, "[I] read the complaint to allege that [Plaintiff] was speaking 'as a citizen.'" *Hill*, 455 F.3d at 242 (on a 12(b)(6) motion, the court examines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."). Second, at this procedural posture- on a motion to dismiss- it cannot be determined whether Plaintiff's speech involves a matter of public concern without analyzing "the content, form, and context of [the] statement, as revealed by the whole record." *Id*. at 242-43; *see also Santucci v. Gross*, No. 07-373, 2007 WL 2688650, at *4 (E.D. Pa. Sept. 10, 2007) (district court finding that it was unable on a motion to dismiss to determine whether the plaintiff's speech involved a matter of public concern). However, as Plaintiff claims that he sought "to bring to light actual or potential wrongdoing or breach of public trust," *Holder*, 987 F.2d at 195, *i.e.*, misfeasance by a Clifford Township Supervisor, he has sufficiently stated conduct protected by the First Amendment. Finally, Plaintiff claims that his refusal to comply with Defendant Marcho's request was a substantial factor in the alleged retaliation, as the budget was reduced less

than two (2) weeks after Plaintiff voiced his opposition to the request. (*Sec. Am. Compl.*, ¶ 32.)  Plaintiff, therefore, has adequately stated the First Amendment retaliation claim in Count IV of the Second Amended Complaint.

### III. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be denied.

An appropriate order follows.


<u>November 27, 2012</u>                                              <u>  /s/ A. Richard Caputo  </u>
Date                                                                                A. Richard Caputo
                                                                                       United States District Judge