UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD A. CARROLL, | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:12-0553 |
| | : |
| v. | |
| | : (JUDGE MANNION) |
| CLIFFORD TOWNSHIP, *et al.*, | |
| | : |
| Defendants | : |

# M E M O R A N D U M

A trial on plaintiff police officer's claim for interference with his First Amendment right to freedom of association resulted in a verdict against defendants for one dollar. The jury also awarded punitive damages in the amount of $15,000.00 against defendant Clifford Township supervisor Chris Marcho and $15,000.00 against defendant Clifford Township supervisor Dennis Knowlton. At the "Charge" conference, defendant objected to the charge for punitive damages. The court reserved its ruling on the objection to punitive damages until after a verdict was reached. At issue now is whether the award of punitive damages can stand. The parties have briefed the appropriateness of the punitive damages award. (Docs. 76, 77). The court has thoroughly reviewed the evidence presented at trial and has determined that the award of punitive damages must be **DISMISSED**.

**I.    BACKGROUND**

In this case, plaintiff Clifford Township police officer Donald Carroll brought several claims against Clifford Township and two of its township supervisors, Dennis Knowlton and Chris Marcho, pursuant to 42 U.S.C. §1983. The third township supervisor, Barry Searle, commissioner of the township police force, was not a defendant in the case. Plaintiff's claims for First Amendment retaliation were disposed of at the summary judgment stage, leaving only one issue for trial - whether the defendants had violated plaintiff's First Amendment right to association by failing to sign his application to become a member of the Fraternal Order of Police ("FOP"), a union for police officers.

At trial, the evidence showed that the plaintiff presented an FOP application form to the township supervisors in February 2012 after a township meeting. The application form has a space for an officer's mayor or supervisor to confirm that the applicant is employed, has passed his civil service exam, and has completed his probationary period. The township supervisors indicated to plaintiff that they would forward the form to the township solicitor for advice regarding whether to sign it or not. In the meantime, about three months later in May of 2012, the township police department was entirely disbanded for financial reasons. As a result, plaintiff's FOP application was never signed. Prior to the time of the department's disbandment, the supervisors had not received advice from their solicitor

2

regarding whether they should sign the FOP application. (Tr. 52:14-17; 60:6-9).[1]

Evidence was brought out at trial that plaintiff had given an FOP application to non-defendant supervisor Barry Searle, either at Searle's home or in plaintiff's office, in March of 2011. Defendant Chris Marcho was not a supervisor at that time, and defendant Dennis Knowlton testified that he did not recall seeing the 2011 application. (Tr. 55:2-5). This is supported by Mr. Searle's testimony that he did not bring the 2011 application to the attention of Mr. Knowlton, (Tr. 172:21-22), and the plaintiff's testimony that he did not present the 2011 application to Mr. Knowlton, but gave it to Mr. Searle so he could "bring it up at the agenda of the township meeting." (Tr. 154-55). The plaintiff also testified that he had presented an FOP application to the Clifford Township supervisors in 2007. (Tr. 153-154). Neither Mr. Searle nor Mr. Marcho were supervisors in 2007, and although Mr. Knowlton was a supervisor, the plaintiff did not speak to Mr. Knowlton about his application in 2007. Instead, he dealt with another supervisor. (Tr. 154: 3-8).

Mr. Searle testified that he wanted to sign the February 2012 FOP application, but that Mr. Marcho and Mr. Knowlton "just wanted to make sure what the application meant." (Tr. 184: 7-13). Mr. Searle said that although the defendants did not respond to his requests to discuss the issue, he did not

---

[1]The trial transcript can be found at Doc. 74 and Doc. 75.

believe that they "didn't want it," rather that "they got too much else to worry about right now in their civilian jobs and they just haven't gotten around to it." (Tr. 184: 7-20).

Mr. Marcho testified that he felt he had a "responsibility of this whole Township, and I believe whenever you sign your name to something, you are committing to something... We didn't understand what the commitment was." (Tr. 40:19-24). He testified that he "paid very little attention to it. We were told that our attorney was going to look into it and find out if we really did need or have to sign it." (Tr. 40-41). He stated that he did not sign the form at the March township meeting because "we were waiting for our attorney to come back with direction, and I don't believe at that time he had an answer for us." (Tr. 43:4-9). He also testified to not signing it in April, having just found out that the township had lost a lawsuit and being concerned about the attendant financial implications for the township. (Tr. 43:10-13).

Mr. Knowlton testified that he did not receive any type of training on constitutional rights from Clifford Township prior to 2012. (Tr. 53-54). He also testified, "You know, if you have to sign a paper that is going to affect the Township, if I don't know what the paper is, I need a lawyer, yeah. I'm financially responsible. We were in financial trouble. I'm saying I just can't go and sign anything." When asked whether he had asked the solicitor about the status of the FOP form, he stated that there had been some talk about it, but that with the financial issues arising at the time, "it was just overwhelming and

we didn't get to that one." (Tr. 61:7-14).

Both Mr. Knowlton and Mr. Marcho testified that they were aware of the existence of a First Amendment right to association. (Tr. 52: 4-6; 54:3-6).

## II. LEGAL STANDARD

"It is well established that there are procedural and substantive constitutional limitations" on punitive damage awards. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003)(*citing* Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001)). "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." Id. The determination of whether or not there is sufficient evidence to support an award of punitive damages is a question of law. Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000)."[T]he terms 'malice' and 'reckless' ultimately focus on the actor's state of mind." Id., at 431(*citing* Kolstad v. American Dental Assoc., 527 U.S. 526 (2000)). Punitive damages may be awarded in a §1983 action when the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id., at 430-31. The Third Circuit's view is that "punitive damages in general represent a limited remedy, to be reserved for special circumstances." Michel v. Levinson, 437 F.App'x 160, 164 (3d Cir. 2011)(*citing* Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir. 1989)).

In evaluating the reasonableness of a punitive damages award, the Supreme Court has found the following factors to be relevant: "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases." Dee v. Borough of Dunmore, 474 F.App'x 85, 89 (3d Cir. 2012)(*citing* BMW of N. America., Inc. v. Gore, 517 U.S. 559, 575, 580, 583 (1996)).

The degree of reprehensibility of a defendant's conduct is the "most important indicium" of the constitutionality of a punitive damages award. Campbell, 538 U.S. 408, 419 (2003). To determine the reprehensibility of conduct, a court considers "whether the harm caused was physical as opposed to economic; whether the defendant's actions evinced indifference to or reckless disregard for the health or safety of others; the financial vulnerability of the victim; whether the conduct was repetitive or isolated; and whether the harm was the result of intentional malice, trickery, deceit, or mere accident." Dee, 474 F.App'x, at 89 (*citing* Campbell, 538 U.S., at 419).

### III.   DISCUSSION

As the uncontroverted evidence establishes that neither individual defendant was aware of the 2007 or 2011 FOP application requests, the sole issue here is whether defendants' behavior regarding the 2012 FOP

application justifies the award of punitive damages.

The degree of reprehensibility of the defendants' conduct in the trial record is clearly insufficient, as a matter of law, to justify any imposition of punitive damages. A review of some of the relevant factors the court should consider in determining reprehensibility makes this clear. First, the jury determined that plaintiff did not suffer any actual harm as a result of the events in this case. (Doc. 69). Moreover, while plaintiff submitted three FOP applications to Clifford Township over the years, only <u>one</u> of the applications was presented to the individual defendants in this case. This single presentation to the individual defendants is best described as an isolated incident. Additionally, there is no evidence that the failure to sign the FOP form was the result of intentional malice, trickery, or deceit.

The trial record is completely devoid of evidence that Mr. Marcho and Mr. Knowlton were acting with intentional malice. Plaintiff's counsel claims that she showed Mr. Marcho's evil motive at trial during the following cross examination of non-defendant supervisor Barry Searle:

> Q. Well, isn't it true that Mr. Marcho was after Donny Carroll? He complained the first meeting that he was supervisor about him?
> [Overruled objection]
> A. I wouldn't characterize it as being after Officer Carroll. Mr. Marcho had received complaints from some citizens, but he was a new supervisor, and I wouldn't characterize it as being after him.
> Q. But Mr. Marcho had complained about Donny and his police work, correct?
> A. I think I would characterize it more that he raised questions,

7

>because, again, he was new and, you know, he got calls from citizens in the township. He would be saying, you know, what was the story?

(Tr. 181-82). This testimony is not only insufficient to show evil motive, but, to the contrary, it displays Mr. Marcho's apparent good faith attempt to carry out his responsibilities when confronted by citizens' complaints. While this exchange may have been a questionable attempt by plaintiff's counsel to suggest the answer she wanted, her questions, of course, are not evidence. Further, Mr. Searle's answers clearly reject her suggestions. And, finally, even if this testimony demonstrated that there was a conflict between Mr. Marcho and plaintiff over plaintiff's job performance, it in no way establishes that Mr. Marcho acted with a reckless or malicious state of mind in waiting to hear from the township's solicitor before signing the plaintiff's FOP application.

Plaintiff repeatedly argues that the individual defendants here "refused to sign" the FOP application, and that these refusals are evidence of malice or recklessness. The trial record does not support that any such "refusal" occurred. There is a total dearth of evidence that Mr. Knowlton or Mr. Marcho ever told the plaintiff that they would not sign the FOP application, or that they disapproved of his attempt to associate with the FOP. There is not even evidence in the trial record that the individual defendants ever made an affirmative decision not to sign the application. Plaintiff even agreed that at the time he submitted the FOP application, "the supervisors advised [him] that they had to look into it and give it to their solicitor," and that "they

8

indicated...that it was probably a good thing and they were positive about it." (Tr. 157:10-16).

Moreover, the plaintiff's late February 2012 e-mail inquiry to Mr. Searle regarding the status of that FOP application reflected that the supervisors had not yet heard back from their solicitor, and that was why there had not yet been a decision on whether to sign the form. (Tr. 157-58). Thus, even the plaintiff's own testimony does not demonstrate that he was ever told that the Clifford Township supervisors refused to sign his form, or that a decision had been made that they would not sign the form. All that the evidence supports is that the supervisors were awaiting for a response from their solicitor during a financially tumultuous period in the township. This does not demonstrate malice, and does not justify the imposition of punitive damages.

Plaintiff also argues that the individual defendants' "refusal to even discuss" the FOP application is evidence of malice and recklessness. While Mr. Searle's testimony does reflect that the individual defendants did not respond to his requests to discuss the FOP application, (Tr. 184:14-16), plaintiff's e-mailed inquiry and Mr. Searle's response also show that at that time, the Clifford Township supervisors had not yet received advice from their solicitor regarding the FOP application. Mr. Searle also testified that he was "quite sure whatever counsel came back and told them to do, we would have done." (Tr. 75-76). Again, nothing in this testimony indicates that there was any malice, intent to harm, deceit, or recklessness at play on the part of the

9

individual defendants.

Citing Alexander, the plaintiff correctly notes that knowledge that one may be acting in violation of federal law is relevant to whether punitive damages are appropriate. While the evidence at trial may have shown that Mr. Marcho and Mr. Knowlton knew about the existence of the right to freedom of association as a general matter, it did not show that they had any knowledge that their delay in acting, or even their failure to act while waiting for the advice of counsel, was potentially in violation of federal law. *See* Alexander, 208 F.3d, at 431. Additionally, there is nothing to suggest that the referral to the attorney was undertaken in a malicious attempt to harm plaintiff or with reckless disregard to his rights.

Along the same vein, the plaintiff contends that the FOP application was so simple that giving it to a solicitor for advice on the proper course of action is evidence of malicious intent or recklessness. However, there is simply nothing in the trial record to support that Mr. Marcho or Mr. Knowlton understood the possible consequences of signing or not signing the form, and certainly nothing to demonstrate that they were aware that asking their solicitor to give them advice, prior to signing on behalf of the township, could have an affect on the plaintiff's constitutional rights. There clearly was insufficient evidence presented that Mr. Knowlton or Mr. Marcho had knowledge of the law surrounding the First Amendment right of association to justify punitive damages.

Unlike other cases where the Third Circuit has upheld punitive damages awards because of "intentional disparate treatment," "retaliation," or other "callous, intentional, or malicious conduct," this case does not present evidence that defendants intentionally harmed plaintiff or were reckless with his constitutional rights. *See* Dee, 474 F.App'x, at 89 (*citing* Feldman v. Phila. Housing Auth., 43 F.3d 823, 834 (3d Cir. 1994); Springer v. Henry, 435 F.3d 268, 282 (3d Cir. 2006)). There is simply no basis for an award of punitive damages, and therefore the punitive damages awards will be **DISMISSED**.

## IV.  CONCLUSION

For the foregoing reasons, the award of punitive damages in the amount of $15,000.00 against Dennis Knowlton will be **DISMISSED**. The award of punitive damages in the amount of $15,000.00 against Chris Marcho will be **DISMISSED**. The Clerk is directed to enter judgment for plaintiff Donald Carroll in the amount of $1.00. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: May 13, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-0553-03.wpd